CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 25, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **ALANA MARIE KARNES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No.: 7:24-cv-335 |
| ) | |
| **MIDLAND CREDIT MANAGEMENT,** ) | |
| d/b/a **ENCORE CAPITAL GROUP,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Alana Karnes, proceeding *pro se,* alleges that her former employer, Defendant Midland Credit Management ("Midland"), delayed her disability benefits and fired her after she was diagnosed with a disability in breach of her insurance and employment contracts and in violation of the Employment Retirement Income Security Act ("ERISA"), the Americans with Disabilities Act ("ADA"), and the Family and Medical Leave Act ("FMLA"). Midland moved to dismiss Karnes's claims. For the reasons stated below, Midland's motion is **GRANTED**. Karnes's claims under the ADA are **DISMISSED WITH PREJUDICE**. Karnes's remaining claims are **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND.**

## FACTS

In general terms, Karnes alleges that Midland, her former employer and insurance plan administrator, is responsible for the untimely processing of her claims for short-term and long-term disability. Karnes admits that she received the full benefit of her insurance policies but alleges that she was injured by Prudential's, Midland's claim processor, delay in distributing her benefits. She also alleges that Prudential failed to properly document her medical leave, and as a

result, Midland terminated her while she was "still legally under protection from combined FMLA and ADA leave."

Karnes asserts claims for: 1) "Intentionally and maliciously attempting to induce [her] to breach a contract and or lie about [her] disability in attempt to facilitate the non-payment of benefits;" 2) "Breach of contract, which [Midland] had to provide insurance coverage;" 3) "Bad faith refusal to carry out the employment contract;" 4) "Malicious misrepresentation of material fact;" 5) "[B]reach of protected leave of Absence regulated by ERISA"

Plaintiff attaches several documents to her Complaint, including an Amended Charge of Discrimination submitted to the EEOC. The Charge states the following:

> In May 6, 2021, I was diagnose[d] with a disability. I informed the General Manger of my diagnosis. In May 2022, after returning to work, Human Resources informed me the third-party service provider Prudential had not received all of my paperwork. Because of this, part of my leave from November 2021 through February 2022 was not covered. Human Resources told me I could have my doctor sign and acknowledge there would be no further supporting documentation of my disability provided to Prudential on my claim. If I could provide that letter, they would be willing to work with me and potentially look past the absences they said were not covered by FMLA and the ADA so I could remain with the company. Since I told them I could not, they continued with the firing process although my doctor and licensed counselor sent in supporting medical documents. I was informed on May 24, 2022, my last day of employment would be May 25, 2022.
>
> The reason given by the Leave of Absence Analyst for me being discharged was that I had not provided the necessary documentation to Prudential to account for my leave of absence. I was told if I did not provide Prudential with documentation that supports the denied absence dates by the end of business on May 17, 2022, they would inform Prudential that the dates remained denied which may have led to corrective action up to and including termination.

Karnes also attached extensive communications between state investigators, her attorneys and Prudential. The letters show that Karnes was given short-term and long-term disability while she was unable to work due to depression. The correspondence also

shows delays in Prudential's claims processing. Based on the documents, the Court infers that Plaintiff also seeks to assert claims under the FMLA and ADA.

## STANDARD OF REVIEW

"A complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Legal conclusions, however, are not entitled to the same presumption of truth. *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (noting that while detailed factual allegations are not required, a plaintiff must still provide more than labels, conclusions, or a "formulaic recitation of the elements of a cause of action"). As Karnes proceeds *pro se*, her pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted). Nevertheless, a *pro se* plaintiff must "demonstrate more than a sheer possibility that a defendant has acted unlawfully," and "articulate facts that, when accepted as true, demonstrate [she] has stated a claim entitling him to relief." *Hodge v. Gansler*, 547 F.App'x 209, 210 (4th Cir. Nov. 25, 2013) (quotation marks omitted).

## ANALYSIS

I.  **ERISA**

Midland argues that Karnes's ERISA claim must be dismissed, because it is not a proper party to an ERISA action as it does not administer its employee benefit plan. Dkt. 4-1 at 8–9. I agree. An ERISA action is only appropriate against an entity with "control over the

administration of the [p]lan" at issue. *Gluth v. Wal-Mart Stores, Inc.*, 1997 WL 368625, *6 n.8 (4th Cir. July 3, 1997). Because Karnes makes no such allegations, her ERISA claims are dismissed without prejudice.

>ERISA § 502(a)(1)(B) provides:
>
>A civil action may be brought—(1) by a participant or beneficiary—... (B) to recover benefits due to him under the terms of his [employee benefit] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). The Fourth Circuit has clarified, "unless an employer is shown to control administration of an employee benefit plan, it is not a proper defendant in an ERISA action seeking benefits; rather, the plan is the proper party." And, courts in this district and the Eastern District of Virginia, have held this to be true even where the employer is formally listed as the "plan administrator," so long as, it does not actually play a role in "mak[ing] . . . determination of eligibility for coverage, disability, and eligibility for benefits, [or] adjudicate any appeals of denied claims," etc… *Williams v. UNUM Life Ins. Co. of Am.*, 250 F. Supp. 2d 641, 645 (E.D. Va. 2003). *See Renfro v. Unum Life Ins. Co. of Am.*, 2005 WL 1400743, at *2 (W.D. Va. June 15, 2005).

Here, Midland concedes that it is formally listed as the plan administrator. However, it asserts that it has no actual control over the administration of the plan. Dkt. 4-1 at 8. This is consistent with Karnes's allegations that Midland "delegated disability claims administration to the Prudential Insurance Company of America." Dkt. 1 at 2. It is also consistent with Karnes's allegations that Prudential initially denied her application for short-term disability benefits, *id.*, evaluated her initial application for long-term disability benefits and addressed her subsequent appeal, *id.* 2–3, failed to timely issue a benefit decision, and failed to "respond to multiple inquiries regarding the status of her claim, *id.* 3. These allegations demonstrate that Prudential,

not Midland, administered the employment benefit plan at issue. Therefore, Karnes's ERISA claim against Midland is dismissed.

II.     **Breach of Insurance Contract**

Karnes alleges that Midland "breach[ed] [a] contract, which they had to provide insurance coverage to Plaintiff with added spouse who was and is still owed benefits." Dkt. 1 at 4. This claim is preempted by ERISA and must be dismissed.

In *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004), the Supreme Court recognized that ERISA's civil enforcement provisions have "extraordinary pre-emptive power." The Court concluded, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* Thus, "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Id.*

Here, Karnes's breach of insurance contract claim appears to arise from the delays in the adjudication of her claims for short-term and long-term disabilities and for the denial of the procedural protections provided for by ERISA. Dkt. 1 at 2–3. These claims are included within the scope of the plain language of § 502(a)(1)(B), *see infra* I, and are thus preempted by ERISA. *Aetna Health*, 542 at 210. *See Cunningham v. Space Telescope Sci. Inst.*, No. CV WDQ-05-1084, 2006 WL 8456603, at *4 (D. Md. Oct. 26, 2006) (finding state law claims preempted over delays of benefits under ERIS governed benefit plans).

### III. Breach of the Covenant of Good Faith and Fair Dealing

Karnes alleges that Midland is liable for "[b]ad faith refusal to carry out the employment contract in good faith, i.e., the tort of bad faith." Dkt. 1 at 4. Midland argues that this claim should be dismissed because "Virginia does not recognize an independent cause of action for bad faith." Dkt. 4-1 at 5 (citing *Capitol Property Mgmt. Corp. v. Nationwide Prop & Cas. Ins. Co.*, 261 F. Supp. 3d 680, 683 (E.D. Va. 2017)). Midland is correct that Virginia does not recognize the tort of bad faith. *Hoang Do v. Liberty Insurance Corp.*, 2012 WL 13928159. However, given the liberal pleading standard for pro se parties and Karnes's reference to her employment contract, the claim is better construed as a contract claim—breach of the covenant of good faith and fair dealing. *See Frank Brunckhorst Co., L.L.C. v. Coastal Atlantic, Inc.*, 542 F. Supp.2d 452, 462 (E.D. Va. 2009) (recognizing that, "[u]nder Virginia law, every contract contains an implied covenant of good faith and fair dealing).

To survive a motion to dismiss a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must plead "(1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Stoney Glen, LLC v. S. Bank & Tr. Co.*, 944 F. Supp. 2d 460, 466 (E.D. Va. 2013), *clarified on denial of reconsideration*, 2013 WL 4539736 (E.D. Va. Aug. 27, 2013). Here, Karnes alleges that she had an employment contract. However, she does not plead what, if any, legal obligations the employment contract placed on Midland. As a result, she fails to establish a contractual relationship between herself and the company. *See* Restatement (Second) of Contract § 1 (defining a contract as "a promise or a set of promises for the breach of

6

which the law gives a remedy…"). Thus, to the extent Karnes asserts a claim for breach of the implied covenant of good faith and fair dealing, her claim is dismissed.[1]

---

[1] Additionally, to the extent Karnes's motion for breach of good faith and fair dealing claim is premised on Midland's alleged failure to provide insurance benefits to Karnes, it is also preempted by ERISA. *See Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 378 (4th Cir. 2001)*("When a cause of action under state law is premised on the existence of an employee benefit plan so that in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists, ERISA preemption will apply.")(internal citation omitted).

IV.   **Americans with Disabilities Act**

Midland moves to dismiss Karnes's ADA claim for wrongful termination, because Karnes "cannot establish she is a qualified individual with a disability."[2] I agree and dismiss Karnes ADA claim.

The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 121119(8). Here, Karnes has not alleged that she was still able to perform her job at the time she was fired. To the contrary, the documents attached to her Complaint indicate that she was disabled and unable to work until at least February 2024—two years *after* she was fired. Dkt. 1-3 at 8 (stating that Karnes was "prevented from performing the material and substantial duties of her regular occupation as an Account Manager due to General Anxiety Disorder and Major Depressive Disorder (severe)"). Accordingly, Karnes is not a "qualified individual" under the ADA. Therefore, her ADA claim must be dismissed with prejudice. *See Jessup v. Barnes Group Incorp.*, 23 F.4th 360, 365–66 (4th Cir. 2022) (finding that plaintiff was not eligible for relief under the ADA because he admitted that "he was 'unable to work' since his relapse and failed to suggest any reasonable accommodation that would have allowed him to do so….").

---

[2] Midland also argues that Karnes's ADA and FMLA claims must be dismissed because they were not expressly asserted in her Complaint. However, her Complaint and the attached documents contained numerous allegations putting Midland on notice of her claims. *See. e.g.,* Dkt. 1 at 3 ("Plaintiff at the time of termination had active medical certification on filed through October 2022, still legally under protection from combined FMLA and ADA leave."). Given these allegations and the liberal pleading standards applied to pro se plaintiffs, the Court will not dismiss the claims merely because Karnes did not label her claims as FMLA and ADA claims in her Complaint.

V.   **Family Medical Leave Act**

Midland argues that Karnes's FMLA claim should be dismissed because she cannot show that she was prejudiced by Midland's decision to terminate her while she was on FMLA leave. I agree and dismiss Karnes's FMLA claim.

The FMLA entitles eligible employees to take twelve weeks of unpaid leave during any twelve-month period for a "serious health condition that makes the employee unable to perform the functions" of his job. 29 U.S.C. § 2612(a)(1)(D). "It is unlawful under the FMLA for an employer to interfere with an employee's exercise of or the attempt to exercise" this right. *Id.* (citing 29 U.S.C. § 2615(a)(1)). "Following this leave period, an employee has the right to reinstatement to his or her original position or an equivalent post." *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 301 (4th Cir. 2016) (citing 29 U.S.C. § 2614(a)(1)). "'If the employee is unable to perform an essential function of the position because of a physical or mental condition,' however, 'the employee has no right to restoration to another position under the FMLA.'" *Boone v. Bd. of Governors of Univ. of N. Carolina*, 858 F. App'x 622, 624 (4th Cir. 2021) (quoting 29 C.F.R. § 825.216(c)).

To make out a prima facie case of FMLA interference, an employee must prove, among other things, that she was prejudiced because of the interference. *Downs v. Winchester Med. Ctr.*, 21 F. Supp. 3d 615, 617 (W.D. Va. 2014). Harm or prejudice "exists where an employee [inter alia] loses compensation or benefits 'by reason of the violation,' 29 U.S.C. § 2617(a)(1)(A)(i)(I); or suffers some loss in employment status remediable through 'appropriate' equitable relief, 29 U.S.C. § 2617(a)(1)(B*)." Reed v. Buckeye Fire Equip.*, 241 Fed.Appx. 917, 924 (4th Cir. 2007).

9

Here, Karnes alleges that Midland improperly terminated her while she was on FMLA leave. Even if true, she was not harmed because of the termination. Karnes pled that she was unable to work until February 2024. As a result, she would not have been able to resume her job until long after she exhausted her FMLA leave and was, therefore, not eligible for reinstatement regardless of Midland's conduct. *See Phillips v. New Millennium Bldg. Sus.* 2022 WL2188405, *2 (4th Cir. June 17, 2022) (dismissing plaintiff's FMLA claims because he did not have enough FMLA leave to cover all of his absences). Accordingly, Karnes claim under FMLA is dismissed.

## VI. Malicious Misrepresentation of Material Fact and Intentionally Attempting to Induce Breach of Contract

Karnes asserts the following claims:

Malicious misrepresentation of material fact by asserting that no documentation had been provided to the insurance company and not believing that information was, in fact, sent in to the Plan Administrator's insurance company as the Plaintiff was not and is not the one responsible for their communication and efficacy in the face of disability.

Intentionally and maliciously attempting to induce Plaintiff, Alana Karnes, to breach a contract and/or lie about existing disability in attempt to facilitate the non-payment of benefits due as well as an ultimatum to potentially save Plaintiff's employment with Defendant. (Which would have made Plaintiff unable to collect both the full- and long-term disability lump sum payments since.)

Dkt. 1 at 4. Neither are a recognized cause of action. Accordingly, these claims are dismissed.

**VII.     Conclusion**

For the reasons above, Midland's motion is **GRANTED.** Karnes's claims under the ADA are **DISMISSED WITH PREJUDICE.** [3] Karnes's remaining claims are **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND.**

Entered:  March 25, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

---

[3] Karnes is bound by her admission that she was disabled and unable to work until at least February 2024. Accordingly, no amendment could cure the defects in Karnes's ADA claim. *See Young v. Nickols*, 413 F.3d 416, 418 (4th Cir. 2005).

11