CLERKS OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

April, 23, 2026

LAURA A. AUSTIN, CLERK
BY:s/ KELLY BROWN
DEPUTY CLERK

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| ALANA MARIE KARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 7:24-cv-00335 |
| | ) | |
| MIDLAND CREDIT MANAGEMENT, | ) | |
| d/b/a ENCORE CAPITAL GROUP, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Midland Credit Management's Motion to Dismiss Plaintiff's Amended Complaint, Dkt. 26. Plaintiff Alana Marie Karnes, proceeding *pro se*, filed the Amended Complaint after I dismissed her original complaint for failure to state a claim.

Defendant's motion is **GRANTED**. All claims in the Amended Complaint are **DISMISSED WITH PREJUDICE**.

**FACTUAL BACKGROUND**

Midland employed Karnes until her termination on May 25, 2022. During this time, Karnes participated in Midland's ERISA-governed employee benefit plan. Although Midland served as the plan administrator, it delegated disability claims administration to Prudential Insurance Company, which handled all claim evaluations and appeals. Dkt. 1 at 2; Dkt. 24 at 3.

On May 5, 2021, Karnes was diagnosed with a disability and was approved for medical leave beginning in July 2021. *See* Dkt. 24 at 4. In October 2021, Karnes "attempted a return to work . . . under accommodations." *Id.* However, "[a]fter encountering barriers and further health issues," she initiated a new disability claim in November 2021. *Id.* Karnes received short-term

disability ("STD") benefits until Prudential determined that no benefits were payable beyond January 2, 2022, due to insufficient medical documentation. *See* Dkt. 1-3 at 3. Karnes submitted additional medical information between February and May 2022 in support of her claim, but Prudential found that the information received did not change its decision to deny her claim for further STD benefits. Prudential advised Karnes of her right to appeal the claims denial. *See id.* at 2–4.

Karnes returned to "full-time, in office work" on May 9, 2022. Dkt. 1 at 3. On May 10, 2022, Midland informed Karnes that, "[p]er our conversation on 4/21/2022," she had until May 17, 2022 to provide documentation supporting all absence dates denied by Prudential or face termination. Dkt. 30-1 at 1; *see also* Dkt. 24 at 4. Karnes was out of work with COVID-19 from May 17 to May 24, 2022, and she was terminated the next day. Dkt. 24 at 4.

Following Karnes's termination, on June 10, 2022, Prudential reversed its prior decision and paid Karnes full benefits under the STD policy for the period of January 3 to May 8, 2022. Dkt. 1 at 2; Dkt. 1-3 at 4. After receiving STD benefits, Karnes filed a claim for long-term disability ("LTD") benefits under her plan. While Prudential initially denied Karnes's application, Karnes appealed the decision, and Prudential granted her appeal. Dkt. 1 at 2–3. Karnes received all LTD benefits to which she could be entitled under her plan on March 26, 2024. *Id.* Documents submitted by Karnes indicate that she remained disabled and unable to work through at least February 19, 2024. *See* Dkt. 1-3 at 7–8; Dkt. 22 at 8.

## **PROCEDURAL HISTORY**

Karnes initially filed suit on May 24, 2024, asserting claims for breach of contract, disability discrimination under the Americans with Disabilities Act ("ADA"), and interference under the Family and Medical Leave Act ("FMLA"). She also sought interest on delayed

benefits under ERISA § 502(a)(1)(B). *See* Dkt. 1. I granted Midland's motion to dismiss the complaint, dismissing Karnes's ADA discrimination claim with prejudice and her remaining claims without prejudice with leave to amend. Dkt. 22.

On April 24, 2025, Karnes filed an Amended Complaint, Dkt. 24. In addition to reasserting her dismissed claims, the Amended Complaint asserts several new claims, including retaliation under the ADA, FMLA, and ERISA § 510; breach of fiduciary duty under ERISA §§ 502(a)(3) and 404; and state law claims for forgery, wrongful discharge, and defamation. Midland moves to dismiss the Amended Complaint. Dkt. 26.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555 (requiring a complaint to contain facts sufficient "to raise a right to relief above the speculative level"). While courts must liberally construe *pro se* complaints, such liberal construction is not without limits, and a *pro se* plaintiff

still must allege facts that state a cause of action. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## **ANALYSIS**

### I.     **Claims Previously Dismissed by the Court**

Karnes's Amended Complaint reasserts four claims that were addressed in the Court's March 25, 2025 Opinion: (1) disability discrimination under the ADA; (2) interference under the FMLA; (3) breach of the Virginia common law duty of good faith and fair dealing; and (4) claims for benefits under ERISA § 502(a)(1)(B). I address each in turn.

#### A.  **ADA Discrimination**

I previously dismissed Karnes's ADA discrimination claim with prejudice, finding that she has not alleged that she was able to perform her job at the time she was fired and therefore is not a "qualified individual" under the ADA. *See* Dkt. 22 at 8. The doctrine of res judicata prohibits relitigation of claims dismissed with prejudice arising from the same cause of action. *See Davison v. Rose*, 19 F.4th 626, 633–34 (4th Cir. 2021); *Barnwell v. Ark Land, LLC*, 547 F. Supp. 3d 526, 534 (W.D. Va. 2021).

Further, even if the Court were to construe the amended complaint as a motion to reconsider or amend the judgment, amendment would be futile. Karnes remained disabled long after her termination and does not allege that she was able to return to work. Because an ADA discrimination claim requires that the plaintiff be a "qualified individual" capable of performing

4

the essential functions of the job with or without reasonable accommodation, Karnes still fails to state a plausible claim.

Karnes's ADA discrimination claim is therefore **DISMISSED WITH PREJUDICE**.

### B. FMLA Interference

To establish unlawful interference under the FMLA, an employee must show prejudice. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (finding that the FMLA "provides no relief unless the employee has been prejudiced by the violation"); *Downs v. Winchester Med. Ctr.*, 21 F. Supp. 3d 615, 617 (W.D. Va. 2014) (citations omitted). I previously dismissed Karnes's FMLA interference claim because she could not show prejudice from her termination. *See* Dkt. 22 at 10. Since Karnes was unable to work until at least February 2024, she would not have been able to resume her job until long after she exhausted her FMLA leave. At that point, Midland "would not have been obligated to reinstate her to her position or an equivalent one." *Lundberg v. Delta Response Team, LLC*, No. 3:23-CV-00042, 2025 WL 364452, at *15 (W.D. Va. Jan. 31, 2025) (citing *Donahoo v. Master Data Ctr.*, 282 F. Supp. 2d 540, 556 (E.D. Mich. 2003)).

In her Amended Complaint, Karnes makes additional allegations about "threats of adverse action tied to the use of leave," stating that she was "given an ultimatum between maintaining employment and never turning in more information on rightfully claimed disabilities which was a gross show of immoral and adverse action." Dkt. 24 at 9. However, requesting medical documentation to support leave requests for the time she was out of work from January through May 2022 does not constitute interference; rather, it is a standard part of FMLA administration. Employers may require employees to provide medical certification supporting their need for leave. 29 C.F.R. § 825.305; *see also Washington v. Hair Cuttery Fam. of Brands*,

No. 8:24-CV-02542-PX, 2025 WL 2085209, at *3 (D. Md. July 24, 2025) ("[A]n employer's mere request for medical verification in connection with FMLA leave alone will not constitute 'interference' under the Act.") (citations omitted). Here, Midland approved Karnes's leave contingent upon her provision of medical documentation and gave her seven days to cure any deficiencies in documentation. *See* Dkt. 24 at 4, 16. These actions cannot sustain an interference claim for the time leading up to her termination from January through May 2022.

Other than Midland's request for medical documentation, Karnes does not provide additional factual support for her allegation regarding threats. Karnes likewise does not assert any new facts to show that she suffered harm because of her termination. She merely alleges that Midland "fail[ed] to reinstate her following protected leave," *id.* at 9, which does not cure the causation defect.[1] FMLA interference requires showing that the employer's conduct actually interfered with the employee's rights under the Act. *Hannah P. v. Haines*, 80 F.4th 236, 244 (4th Cir. 2023) ("[T]he employee . . . retains the ultimate burden of proof to demonstrate that the employer's actions did, in fact, interfere with the employee's FMLA rights and directly cause the alleged harm."). Because Karnes alleges she remained disabled and unable to work through at least February 2024, long after any FMLA leave would have expired, she cannot establish that Midland's actions caused her any cognizable harm. *See Lundberg*, 2025 WL 364452, at *15–16

---

[1] To the extent Karnes's claim relies on her allegation that she was not reinstated to her position in 2021, *see* Dkt. 24 at 9, that allegation is time-barred. *See* 29 U.S.C. § 2617(c)(1) (providing a two-year statute of limitations for claims brought under the FMLA).

6

(finding that an employee was not prejudiced where she was not fit to return to work until after the FMLA period expired).

Accordingly, Karnes's FMLA interference claim is **DISMISSED WITH PREJUDICE**.

### C. Virginia Common Law Duty of Good Faith and Fair Dealing

"Under Virginia law, every contract contains an implied covenant of good faith and fair dealing." *Frank Brunckhorst CO., L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 462 (E.D. Va. 2008). In this case, Karnes asserts that Midland refused to carry out its employment contract with her in good faith. I previously dismissed this claim because Karnes failed to plead what, if any, legal obligations Midland had under the employment contract.[2] Dkt. 22 at 6.

In Virginia, the duty of good faith and fair dealing may be breached in two ways: "(1) where a party has a clear contract right, even if its exercise would arguably be arbitrary, that party is only forbidden from acting dishonestly; (2) but where a party has discretion in performance, that party cannot act arbitrarily or unfairly." *Stoney Glen, LLC v. S. Bank & Tr. Co.*, 944 F. Supp. 2d 460, 466 (E.D. Va. 2013), *clarified on denial of reconsideration*, No. 2:13CV8-HCM-LRL, 2013 WL 4539736 (E.D. Va. Aug. 27, 2013) (citation modified). Thus, to maintain a claim of breach of the implied duty of good faith and fair dealing, a plaintiff must establish a specific contractual right that the defendant allegedly frustrated. The covenant "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not

---

[2] As noted previously, this claim is preempted by ERISA to the extent it deals with employment benefits. *See* Dkt. 22 at 7 n.1. Additionally, Virginia law "does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in employment contracts, and in at-will employment contracts in particular." *Devnew v. Brown & Brown, Inc.*, 396 F. Supp. 2d 665, 671 (E.D. Va. 2005) (citations omitted). Karnes has not alleged facts demonstrating that her employment was anything other than at-will.

otherwise exist." *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 493 S.E.2d 516, 520 (Va. 1997) (citations omitted).

The Amended Complaint contains no additional factual allegations regarding contractual obligations. Karnes only alleges that, "[i]n connection with administering health benefits and accommodations, Midland failed to deal fairly and in good faith with Plaintiff, violating the implied covenant inherent in all employment and benefit contracts." Dkt. 24 at 8. This statement is insufficient to plausibly allege a breach of the implied covenant. Because Karnes has not pled what her employment or benefit contract required from Midland, her allegations cannot be tied to a contractual duty, foreclosing her breach of contract claim. Thus, Karnes's claim for breach of the Virginia common law duty of good faith and fair dealing is **DISMISSED WITH PREJUDICE**.

### D. ERISA Benefits

Karnes "brings claims for improper delay and mishandling of disability benefit claims under ERISA § 502(a)(1)(B)." Dkt. 24 at 8. I previously dismissed Karnes's § 502(a)(1)(B) claim, finding that "[a]n ERISA action is only appropriate against an entity with 'control of the administration of the [p]lan' at issue" and that Karnes made no such allegations against Midland. Dkt. 22 at 3–4 (quoting *Gluth v. Wal-Mart Stores, Inc.*, No. 96–1307, 1997 WL 368625, *6 n.8 (4th Cir. July 3, 1997)).

In her Amended Complaint, Karnes argues that Midland is responsible for claim mismanagement because it "exercised administrative control over the benefit plan at issue" as "shown through internal exhibits and communications." Dkt. 24 at 7. However, the documents Karnes attaches to her Amended Complaint primarily consist of correspondence between Prudential and Midland regarding Karnes's requests for ADA accommodations and FMLA

8

leave, not her claims for STD or LTD benefits. The fact that Midland may have been involved in administering requests for leave under the ADA and FMLA does not establish that Midland controlled the administration of the disability benefit plan.

While one exhibit that appears to be a Certificate of Coverage does address Karnes's ERISA plan, that document merely lists Midland as the "Plan Administrator." *Id.* at 24. This designation alone does not establish that Midland exercised actual administrative control over benefit determinations. *See Williams v. UNUM Life Ins. Co. of Am.*, 250 F. Supp. 2d 641, 645 (E.D. Va. 2003) (finding that plaintiff's employer was not the proper defendant where the employer delegated responsibility for administration of its plan, even though the employer was listed as the plan administrator); *Renfro v. Unum Life Ins. Co. of Am.*, No. 2:04 CV 00103, 2005 WL 1400743, at *2 (W.D. Va. June 15, 2005). Additionally, email correspondence regarding Karnes's LTD benefits claim suggests that, at most, Midland provided Prudential with information about Karnes's work status for Prudential to evaluate the claim. *See* Dkt. 24 at 35–36.

Karnes has not otherwise alleged any facts demonstrating that Midland exercised administrative control over STD or LTD benefit determinations. In fact, Karnes alleges that Prudential "is responsible for conducting any ERISA mandated claim evaluation and final review rests with [Prudential] and with no other entity." Dkt. 1 at 2. As such, Karnes has failed to state a viable ERISA claim against Midland. Karnes's claim under ERISA § 502(a)(1)(B) is thus **DISMISSED WITH PREJUDICE**.

## II.    New Claims

Karnes's Amended Complaint asserts the following new claims that were not raised in her original complaint: (1) retaliation under the ADA, FMLA, and ERISA § 510; (2) breach of

fiduciary duty under ERISA §§ 502(a)(3) and 404; and (3) state law claims for forgery, defamation, and wrongful discharge. Because I previously granted leave to amend without express limitations, I will address the merits of Karnes's new claims. Nevertheless, each of these claims fails to state a claim upon which relief can be granted.

### A. ADA Retaliation

The retaliation clause of the ADA prohibits discrimination against individuals for exercising their rights under the Act. *See* 42 U.S.C. § 12203(a). "To establish a prima facie retaliation claim under the ADA, a plaintiff must prove (1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (citing *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011)).

In her Amended Complaint, Karnes alleges that she "was discharged for seeking accommodation through proper medical and procedural channels." Dkt. 24 at 8. According to Karnes, she "was informed she must provide documentation for certain [disability claim] dates by May 17, 2022 or face termination." *Id.* at 4. It is unclear whether Karnes submitted the necessary documentation by the May 17 deadline. In her EEOC complaint, Karnes states that Midland "continued with the firing process although my doctor and licensed counselor sent in supporting medical documents," Dkt. 1-2 at 2, but the record does not indicate when those documents were submitted or whether they were sufficient to support her disability claim. In any case, Karnes was terminated on May 25, 2022.

Even if she satisfies the first two prongs of a retaliation claim, Karnes fails to allege sufficient facts showing a link between the protected conduct and her termination. The causation element requires more than mere temporal proximity between the protected activity and adverse

action; a plaintiff must show that her engagement in protected activity was a but-for cause of the employer's decision. *Moss v. Saja Rest. Grp., LLC*, 670 F. Supp. 3d 349, 364 (W.D. Va. 2023) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). Retaliation cannot be inferred from timing alone where intervening events can explain proximity. *See Cole v. Fam. Dollar Stores of Maryland, Inc.*, 811 F. App'x 168, 174 (4th Cir. 2020) (finding a lack of causation where the plaintiff "incurred two consecutive no call/no show absences" between her complaint and termination); *Watson v. Fairfax Cnty.*, 297 F. Supp. 3d 591, 604 (E.D. Va. 2018).

Here, undisputed facts establish a legitimate, non-retaliatory basis for Karnes's termination that breaks any causal chain between her accommodation requests and the adverse action. On May 10, 2022, Midland informed Karnes that she needed to provide medical documentation supporting her requests for leave by May 17, 2022. The email noted that Prudential had advised Midland that Karnes's absences were "not covered under any FMLA or ADA job protected leave due to lack of or insufficient medical documentation." Dkt. 30-1 at 1. Karnes's termination on May 25, 2022 followed her failure to provide the requested documentation. This sequence of events does not support an inference of retaliatory motive.

Karnes also does not allege specific facts showing that Midland's reason for termination was pretextual or that it was motivated by hostility toward her disability or accommodation request. Karnes does not allege, for example, that Midland terminated other employees for similar documentation failures, or that Midland's communications suggested animus toward her disability. Indeed, Karnes admits that Midland "formally acknowledged via email to Prudential its approval of ADA leave for the Plaintiff, contingent on medical documentation," thus

demonstrating "support of accommodation." Dkt. 24 at 5. Based on these facts, I cannot infer that the termination was retaliatory rather than administrative.

Finally, Karnes argues that Midland should have coordinated with Prudential to obtain medical information if a lack of such information was the reason for her termination. *See* Dkt. 30 at 2. However, Karnes offers no authority to support her position on Midland's obligation to seek out medical documentation. Generally, employees bear the burden of providing appropriate documentation for their specific accommodation requests. *See Cole v. Charlotte Mecklenburg Sch. Dist.*, No. 3:13-CV-057-DCK, 2014 WL 1343123, at * 7–8 (W.D.N.C. Apr. 3, 2014) (rejecting plaintiff's ADA claim where she failed to provide information about her medical condition beyond a diagnosis), *aff'd*, 583 F. App'x 213 (4th Cir. 2014). Failure to do so may serve as a legitimate, non-discriminatory basis for termination. *See, e.g.*, *Hill v. Panetta*, No. 1:12-CV-350, 2012 WL 12871178, at *19 (E.D. Va. Oct. 4, 2012), *aff'd sub nom. Hill v. Hagel*, 561 F. App'x 264 (4th Cir. 2014); *Bowman-Cook v. Washington Metro. Area Transit Auth.*, No. CV DKC 14-1877, 2017 WL 3592450, at *8 (D. Md. Aug. 21, 2017).

For these reasons, Karnes's ADA retaliation claim is **DISMISSED WITH PREJUDICE**.

### B. FMLA Retaliation

Karnes appears to bring a claim of discrimination or retaliation under the FMLA, alleging that "[her] termination occurred in the context of protected leave proceedings."[3] Dkt. 24 at 8. To state an FMLA retaliation claim, a plaintiff must plausibly plead facts that: "(1) she engaged in a protected activity, (2) her employer took an adverse employment action against her, and (3) the

---

[3] Karnes cites to 29 U.S.C. § 2615(b) as the basis of her claim. This Opinion assumes that § 2615(a)(2), which gives rise to "retaliation" or "discrimination" claims, applies here.

adverse employment action was causally connected to the plaintiff's protected activity."

*Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 976 (E.D. Va. 2012) (citing *Yashenko*

*v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006)).

Karnes's FMLA retaliation claim suffers from the same causation deficiencies as her

ADA retaliation claim.[4] "The law under the FMLA is clear that an employer is entitled to

request medical documentation to support a claim of illness." *Sturdivant v. Geren*, No. CIV.A.

1:09-CV-586, 2009 WL 4030738, at *7 (E.D. Va. Nov. 19, 2009) (citation omitted), *aff'd sub*

*nom. Sturdivant v. McHugh*, 450 F. App'x 235 (4th Cir. 2010); *see also* 29 C.F.R. § 825.311.

Midland's May 10, 2022, directive to provide documentation by May 17, 2022, followed by

Karnes's termination on May 25, 2022, reflects an administrative response to Karnes's failure to

comply with a reasonable documentation request—not retaliation for taking or requesting

protected leave. *See, e.g.*, *Buckmaster v. Nat'l R.R. Passenger Corp.*, No. CV RDB-19-3203,

2022 WL 1081947, at *13 (D. Md. Apr. 11, 2022) ("Buckmaster's FMLA retaliation claim fails

in light of his failure to timely provide the requested medical certification."). Consequently,

Karnes's FMLA retaliation claim is **DISMISSED WITH PREJUDICE**.

### C. ERISA Retaliation

Section 510 of ERISA prohibits adverse employment actions taken against a beneficiary

"for exercising any right to which he is entitled" under an employee benefit plan, or "for the

purpose of interfering with the attainment of any right" under such a plan. 29 U.S.C. § 1140.

Karnes alleges that she "was terminated in retaliation for asserting her right to leave and

disability benefits." Dkt. 24. at 8. Allegations to plausibly plead this claim must include "facts,

---

[4] To the extent this claim relates to Karnes's 2021 return to work, it is also barred by the two-year statute of limitations. *See supra* note 1.

which if taken as true, [that] could enable a jury to identify unlawful intent from the other various reasons why an employer might have terminated plaintiff, and to conclude that the employer harbored the requisite unlawful intent." *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 239 (4th Cir. 1991) (citation omitted). Karnes fails to make such allegations here.

ERISA § 510 only protects rights under employee benefit plans, not accommodation or leave rights. *See Borneman v. Principal Life Ins. Co.*, 291 F. Supp. 2d 935, 958 (S.D. Iowa 2003) ("[A]n individual claiming retaliation must show that he engaged in activity that was protected by either his employee benefit plan or ERISA itself."); *Brewer v. Dana Corp. Spicer Heavy Axle Div.*, 205 F. Supp. 2d 511, 518 (W.D.N.C. 2002) ("Section 510 protects plan participants from termination that is motivated by an employer's desire to prevent an employee from receiving benefits earned, but not paid, or rights due, but not yet fulfilled.") (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990)). Here, the record suggests that Karnes was terminated for failing to provide adequate medical documentation to support her leave of absence. Karnes does not allege facts showing that her termination was motivated by her pursuit of ERISA-protected benefits or that Midland acted with intent to interfere with her ability to obtain such benefits. Indeed, by her own admission, Karnes received all benefits she was eligible for under the plan. Dkt 1 at 2. Because Karnes has not alleged sufficient facts connecting her termination to the exercise of ERISA rights, her ERISA § 510 retaliation claim is **DISMISSED WITH PREJUDICE**.

### D. ERISA Breach of Fiduciary Duty

ERISA § 502(a)(3) provides a private right of action for breach of fiduciary duty to the extent the plaintiff seeks "appropriate equitable relief." 29 U.S.C. § 1132(a)(3). To state a claim for breach of fiduciary duty under ERISA § 502(a)(3), a plaintiff must allege three elements: (1)

the defendant was a plan fiduciary; (2) the defendant violated its fiduciary duties; and (3) the

plan suffered a loss due to the breach. *Hugler v. Vinoskey*, No. 6:16-CV-00062, 2017 WL

1653725, at *3 (W.D. Va. May 2, 2017) (citing *Smith v. Sydnor*, 184 F.3d 356, 363 (4th Cir.

1999)).

Here, Karnes's allegations are insufficient to state a plausible claim. She alleges "a

pattern of reckless mismanagement of Plaintiff's disability and leave claims," including

"systemic delays, failure to track and apply received medical documentation, misidentification of

Plaintiff in correspondence with the plan administrator, and conflicting instructions regarding

leave eligibility." Dkt. 24 at 2; *see also id.* at 9. However, Karnes's allegations appear to be

attributable to Prudential, not Midland. For example, Karnes points to Prudential's use of an

erroneous first name for Karnes when corresponding with Midland. *See id.* at 5, 29. The

documents submitted by Karnes also indicate that Prudential, not Midland, bore primary

responsibility for claims processing and decision-making. *See generally* Dkt. 1-3 (summarizing

Prudential's processing and review of Karnes's benefits claims and documenting letters from

Karnes's attorneys to Prudential). Karnes has not alleged specific facts showing that Midland

failed to monitor Prudential's performance, instructed Prudential to deny or delay claims, or

otherwise affirmatively interfered with claims administration.

Moreover, even accepting Karnes's allegations as true and attributing them to Midland,

any administrative delays or errors do not appear to have reduced the amount of benefits paid or

changed the outcome of her claims. Karnes's benefit claims were ultimately processed correctly,

and she was awarded all benefits to which she was entitled. Karnes therefore has not alleged that

15

she has suffered any loss under her plan, nor has she alleged any denial of rights or statutory violations.

Similarly, Karnes fails to plead that she is in need of individualized equitable relief not adequately addressed by other ERISA provisions. *See Juric v. USALCO, LLC*, 659 F. Supp. 3d 619, 628–29 (D. Md. 2023) (denying plaintiff's claim to the extent it is "a reformulation of his unsuccessful claim for benefits") (citing *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 102 (4th Cir. 2006)). In her Amended Complaint, Karnes primarily seeks monetary damages and only requests "[s]uch equitable relief as the Court deems appropriate, including restitution, expungement of Plaintiff's personnel records, and injunctive relief requiring Defendants to revise their internal disability claim handling procedures." Dkt. 24 at 10–11. This vague invocation does not cure Karnes's pleading deficiencies. Karnes does not allege that she was improperly denied benefits, nor does she show ongoing harm or risk of future harm. Accordingly, Karnes's breach of fiduciary duty claim under ERISA § 502(a)(3) is **DISMISSED WITH PREJUDICE**.

### E. Forgery[5]

Karnes alleges that Midland "may have engaged in forgery" by "electronically signing a termination acknowledgment or release form on Plaintiff's behalf without her consent or knowledge." Dkt. 24 at 7. However, as Karnes acknowledges, forgery under Va. Code § 18.2-172 is a criminal offense with no private civil right of action. *See Syed v. Mohammad*, No. 1:15-

---

[5] Karnes's opposition to the Motion to Dismiss does not address Midland's arguments regarding her state law claims. Failure to respond generally constitutes concession, *Borromeo v. Mayorkas*, No. 122CV00289PTGJFA, 2023 WL 2249966, at *5 (E.D. Va. Feb. 27, 2023) (citations omitted), but I will address Karnes's claims on the merits for the sake of completeness.

16

CV-01332, 2016 WL 8731783, at *5 (E.D. Va. Apr. 1, 2016). Karnes's forgery claim is therefore **DISMISSED WITH PREJUDICE**.

### F.  Wrongful Discharge

Karnes brings a wrongful discharge claim under Va. Code § 40.1-27, alleging that she was terminated in "retaliation for asserting statutory rights under ADA, FMLA, or ERISA." Dkt. 24 at 7. Under *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985), an at-will employee in Virginia may bring a common law claim of wrongful discharge if the employee's termination violates Virginia's public policy. However, *Bowman* is a narrow exception to the general rule of employment at-will, and a plaintiff asserting a *Bowman* claim must "identify [a] Virginia statute establishing a public policy" that was violated by the employer. *Lawrence Chrysler Plymouth Corp. v. Brooks*, 465 S.E.2d 806, 809 (Va. 1996).

Here, Karnes fails to identify any Virginia statute establishing a violated public policy. Neither the ADA, FMLA, nor ERISA can be used to support a *Bowman* claim. *See Oakley v. May Dep't Stores Co.*, 17 F. Supp. 2d 533, 536 (E.D. Va. 1998) ("[T]he *Bowman* exception to the at-will employment doctrine is predicated on public policies derived from *Virginia* statutes, not federal laws." (emphasis in original) (citation omitted)); *Briggman v. Nexus Servs. Inc.*, No. 5:18-CV-00047, 2018 WL 6517464, at *4 (W.D. Va. Dec. 11, 2018). Thus, Karnes's wrongful discharge claim is **DISMISSED WITH PREJUDICE**.

### G.  Defamation

Karnes asserts a claim for defamation of character. "In Virginia, when a plaintiff alleges defamation by publication, the elements are (1) publication of (2) an actionable statement

17

with (3) the requisite intent." *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015) (internal quotation marks and citation omitted).

To the extent that the statement was made or published before May 24, 2023, Virginia's one-year statute of limitations for defamation bars this claim. *See* Va. Code § 8.01-247.1. Even if her claim is not time-barred, Karnes has not alleged an actionable defamatory statement or dissemination of the statement to a third party. She only suggests a potential claim "[i]f the false termination information was reported to third parties . . . and damaged Plaintiff's reputation." Dkt. 24 at 7. Because Karnes's claim is merely hypothetical, she fails to state a claim for defamation. *See Wynn v. Wachovia Bank, N.A.*, No. 3:09CV136, 2009 WL 1255464, at *4 (E.D. Va. May 6, 2009) (holding that the possibility of publication in the future is insufficient because "a claim of defamation cannot be based on speculation"). As such, Karnes's defamation claim is **DISMISSED WITH PREJUDICE**.

### III.    Conclusion

For the reasons above, Midland's motion is **GRANTED**. Karnes's claims are **DISMISSED WITH PREJUDICE**.

Entered:  April 23, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge